I. Beck & Sons, Inc. v. Commissioner.
I. Beck & Sons v. Commissioner
Docket No. 2574.
United States Tax Court
1944 Tax Ct. Memo LEXIS 155; 3 T.C.M. (CCH) 776; T.C.M. (RIA) 44253; August 1, 1944
*155 Benjamin Miller, C.P.A., 1457 Broadway, New York, N. Y., for the petitioner. Laurence F. Casey, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding is for the redetermination of a deficiency in income tax for the fiscal year ended May 31, 1940, in the amount of $637. Petitioner alleges that the respondent erred in the determination of the deficiency (1) in his disallowance of $5,000 of salaries paid to the petitioner's president and secretary, its principal stockholders, and (2) in holding that a portion of the salaries paid are not deductible from the petitioner's gross income upon the ground that they were not paid to the officers within two and one-half months after the close of its fiscal year. Findings of Fact The petitioner is a corporation organized in May, 1936, under the laws of the State of New York, and filed a corporation income tax return for its fiscal year ended May 31, 1940, with the collector of internal revenue for the third district of New York. Its business is the manufacturing and sale of mouldings, shapes and accessories to the floor and wall covering trade. During the taxable year, Israel Beck was president *156 of the petitioner and held all of its outstanding preferred stock, consisting of 50 shares, and 213 shares of its common stock, or 64.6 percent of the total number of common shares outstanding. His son, Charles Beck, who was treasurer of petitioner from the beginning of the taxable year until September 1, 1939 (being succeeded as treasurer by his sister), and thereafter was petitioner's secretary, owned 108 shares of the common stock, or 32.7 percent of the total number of common shares outstanding. Charles Beck handled purchases, sales, collections and credits for the petitioner. Israel Beck supervised petitioner's manufacturing operations and also handled certain sales and collections. For each year of petitioner's existence prior to the taxable year petitioner's directors at the close of the respective fiscal years voted bonuses to its said officers, the officers also having received during the respective years salaries in cash. The salaries and bonuses were as follows: Fiscal Year
Fiscal Year
Fiscal Year
Ended
Ended
Ended
May 31, 1937
May 31, 1938
May 31, 1939
Salary
Bonus
Salary
Bonus
Salary
Bonus
Israel Beck
$3,900
$2,000
$3,900
$4,000
$3,891.75
$4,000
Charles Beck
3,120
1,000
3,120
2,000
2,118.80
2,000
*157 At a meeting of the petitioner's directors authorizing the bonuses for the first year the officers agreed to lend the amount of their bonuses to the petitioner to be paid to them on demand. When the bonuses for the next fiscal year were voted "arrangements were made for the payments of same so as not to in any way interfere with the regular business of the corporation." When the bonuses were voted for the year ended May 31, 1939, the minutes of the directors' meeting show "It was agreed that this money remain temporarily with the corporation until definite arrangements for the payment of same will be made at a later meeting." Part of the authorized bonuses were subsequently actually withdrawn in cash by the officers but on August 29, 1939, Israel Beck received 20 shares of the common stock, having a par value of $100 each, making payment therefor by a reduction of $2,000 in the indebtedness to him by the petitioner on account of said bonuses. At the same time, Charles Beck received 10 shares of petitioner's common stock, having a par value of $100 each, making payment therefor by a reduction of $1,000 of petitioner's indebtedness to him on account of said bonuses. On August 30, *158 1939, Israel Beck and Charles Beck, respectively, donated $2,000 and $1,000 of the petitioner's indebtedness to them to petitioner's surplus, reducing petitioner's indebtedness to them on account of said bonuses by said amounts. Prior to May 31, 1939, Israel Beck's salary was fixed at $75 per week by an employment agreement which expired on that date. His salary was continued in that amount until August 31, 1939. On September 1, 1939, petitioner's directors, after considering a complaint of Israel Beck that his salary was not sufficient for his personal needs, and after considering the merits of his services, voted to increase his salary to $90 per week with an additional $10 for disbursements, making a total of $100, and extending his employment agreement for three years to August 31, 1942. At the meeting of September 1, 1939, Charles Beck also requested that his salary be increased from $60 to $75 per week and that he should receive $5 a week for disbursements. Petitioner's directors, after considering the merits of his services, increased his salary from $60 to $75 per week, with an additional $5 for disbursements, thus making a total of $80 as a weekly salary for the period from *159 August 30, 1939, to August 31, 1942. For the fiscal year ended May 31, 1940, Israel Beck was paid in weekly salaries $4,560; Charles Beck $3,765. The minutes of a special meeting of petitioner's board of directors held on May 29, 1940, provides in material part as follows: "In gratitude of the various additional services rendered by some of the individuals, it was unanimously voted that the following bonuses or sums be given to the officers and employees listed below and to be considered additional salary to be paid to the following employees: (a) Israel Beck
$3,000
(b) Charles Beck
1,500
(c) Sigmund Beck, Frances Beck and Sid-
ney Beck all three a total of
500
The officers and directors have all agreed to continue in their respective offices under the same terms and conditions as was arranged at the meeting of September 1, 1939. The Treasurer of the corporation was thereafter directed to issue checks in the respective amounts voted herein to the parties as soon as convenient and the money available." It had been the practice of Israel Beck from the beginning of the corporation to hold salaries of himself and his son to a minimum. It was understood from the beginning *160 that the salaries paid weekly would be supplemented by a bonus for services actually rendered at the close of the year, if profits of the petitioner warranted the payment of a bonus. It was in accordance with such practice that the bonuses above referred to were voted on May 29, 1940. A part of the bonuses which had been voted in prior years had been turned back to the corporation by Israel Beck and Charles Beck in order to enable the corporation to purchase machinery and make other needed improvements without borrowing from the bank. The financial condition of the company on May 31, 1940, the close of its fiscal year, was strong. Its current assets were approximately three times its current liabilities and the petitioner had cash on hand for the payment of the bonuses voted. They were available to them at any time they should elect to receive them. Both Israel Beck and Charles Beck filed individual income tax returns for the calendar year 1940. In such returns they included the full amount of the cash which they had drawn as weekly salaries, and, in addition, the amounts of the bonuses voted to them on May 29, 1940, although neither had made a call upon the company for the full *161 amount of his bonus to December 31, 1940. At May 31, 1940, petitioner had cash on hand of $5,196.59; notes and accounts receivable of $23,038.06; and loans and accounts payable of $17,972.85. Petitioner has never declared any dividends during its existence. Petitioner's reported net income for the fiscal year ended May 31, 1940, was $605.06. This was after the deduction from gross income of the bonuses voted on May 29, 1940. Opinion The respondent has disallowed the deduction from petitioner's gross income for the fiscal year ended May 31, 1940, of the $5,000 of bonuses voted by the petitioner's board of directors on May 29, 1940; upon the ground that these payments added to weekly salaries were in excess of reasonable compensation for services rendered. The respondent submits with respect to the bonuses paid to Israel Beck and Charles Beck that they were in addition to weekly salaries and that both father and son had agreed to serve the corporation during the fiscal year at the weekly salaries paid them. He further submits that the bonuses paid to these individuals were in reality a distribution of profits to them since they roughly corresponded to the stockholdings of each. *162 The evidence shows that the weekly salaries were kept at a minimum with the approval of both father and son in order that the corporation might have on hand cash to pay its regular bills and income sufficient to make necessary improvements, the purchase of necessary machinery, etc. It was the understanding of father and son and the practice of the corporation to supplement the weekly salaries with bonuses provided the results of operations warranted the payment of a bonus at the close of each fiscal year. This practice was carried out during the taxable year as during former fiscal years. It will be noted from our findings of fact that $500 of the $5,000 bonus was to be paid to other employees than father and son, one of whom was not a stockholder. We think upon the evidence there is no ground for the disallowance of any part of this $500 bonus upon the ground of the unreasonableness of the salaries paid such three employees. From a consideration of all of the evidence we are also of the opinion that the amounts of salary and bonuses paid to Israel Beck and Charles Beck were intended as compensation for services and not as distributions of earnings which would qualify as dividends *163 upon capital stock. Both father and son were skilled in the business of the petitioner, to which they devoted their full time and attention. Charles Beck testified that he had been offered a position at $7,500 a year by another concern in the same line of business but that he preferred to stay on with his father in building up the business of the petitioner. In our opinion the salaries and bonuses paid to the father and son and the other employees were not in excess of reasonable compensation for services actually rendered. The respondent further contends that the bonuses paid to Israel Beck and Charles Beck are not deductible from the petitioner's gross income for the taxable year under the provisions of section 24 of the Internal Revenue Code, which, so far as material, reads as follows: SEC. 24. ITEMS NOT DEDUCTIBLE. (a) General Rule. - In computing net income no deduction shall in any case be allowed in respect of - (c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued - (1) If such expenses or interest are not paid within the taxable *164 year or within two and onehalf months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b). The petitioner admits that father and son are persons between whom losses would be disallowed under section 24 (b); therefore, that it falls within subdivision (c) (3). It denies, however, that the bonuses were not paid to the officers within the meaning of subdivision (1) and contends that since they were available to father and son from the date they were credited to the Loans and Exchange Account on May 29, 1940, father and son were required to treat them as cash income as of the date they were credited to such account. The respondent argues that there was a substantial restriction upon the payment *165 of the bonuses because he says the resolution of the board of directors provides that "the Treasurer of the corporation was thereafter directed to issue checks in the respective amounts voted herein to the parties as soon as convenient and the money available." It is the unqualified testimony of Charles Beck that both father and son understood that the bonuses were available to them from the date they were credited to the Loans and Exchange Account. The respondent admits that the corporation had funds on hand for the payment of the bonuses at any time father and son elected to receive them. In view of these facts we are of the opinion that the bonuses constituted taxable income of father and son who made their returns, on a cash basis on the date they were made available to them, namely, May 29, 1940. It is further in evidence that they reported the full amount of the bonuses voted to them in their income tax returns for 1940, although they had not drawn the full amount of the bonuses up to the close of the calendar year 1940. The contention of the petitioners upon this point is sustained upon the authority of Musselman Hub-Brake Co. v. Commissioner (C.C.A., 6th Cir.), 139 Fed. (2d) 65, *166 and Michael Flynn Manufacturing Co., 3 T.C. 932. Decision will be entered under Rule 50.