Lectrolite Corporation v. Commissioner.
Lectrolite Corp. v. Commissioner
Docket No. 3052.
United States Tax Court
1945 Tax Ct. Memo LEXIS 228; 4 T.C.M. (CCH) 437; T.C.M. (RIA) 45143; April 20, 1945
*228 Petitioner, on an accrual basis, credited to its president the full amount of his salary and commissions for the period from January 1, 1940 to October 31, 1940, but paid in cash only a part thereof. In his income tax return for the year 1940, the president included the full amount of his salary and commissions so credited for that year. Petitioner did not have cash on hand for the payment of such salary and commissions in full but could have borrowed ample funds with which to pay the full compensation at any time during the petitioner's taxable period and 2 1/2 months thereafter. Held, the deductions of unpaid salary and commissions are allowed since the conditions imposed by section 24 (c), Internal Revenue Code, have not been met. John J. Kendrick, Esq., for the petitioner. W. W. Kerr, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $1,620.47 in the petitioner's income tax for the period from January 1, 1940 to October 31, 1940. The singie question at issue is the disallowance of a deduction of $9,151.14 representing compensation paid to its president during the taxable period. The disallowance was based on section 24 (c) of the Internal Revenue Code *230 . Findings of Fact Certain facts were stipulated and admitted in the pleadings. The material portions thereof are as follows: The petitioner was incorporated under the laws of the State of Ohio on January 13, 1931. Its principal place of business is located in Definance, Ohio. It filed its income tax return for the taxable period with the collector of internal revenue for the tenth district of Ohio. During the taxable period the petitioner was engaged in the business of manufacturing and selling hand tools and pole line hardware. On October 31, 1940, and at all times material to the issue, Harold L. Schlosser, president of the petitioner, and his wife, Helen G. Schlosser, owned 708 shares of the total of 985 1/2 shares of the outstanding stock of the petitioner. The 708 shares of stock thus owned by the Schlossers represented more than 50 per cent in value of the total outstanding stock of the petitioner. During the taxable period, the board of directors of the petitioner was as follows: Harold L. Schlosser Helen G. Schlosser E. L. Clemens L. G. Wachtman E. H. Newman Helen G. Schlosser is the wife of Harold L. Schlosser, E. L. Clemens was an attorney for the company, *231 and L. G. Wachtman and E. H. Newman were employees of the company. During the period from January 1, 1940 to January 15, 1941, Harold L. Schlosser was the president and general manager of the petitioner. During that period, the petitioner's financial transactions, including disbursement of the petitioner's funds, were under the direction and control of Harold L. Schlosser. The petitioner maintained its books and records and filed its Federal income tax return for the period here involved upon an accrual system of accounting. Harold L. Schlosser, president of the petitioner, prepared and filed his Federal income tax return for the year 1940 using the cash receipts and disbursements system of accounting. On May 17, 1940, an employment contract was entered into by and between Harold L. Schlosser and the petitioner. The provisions essential to the issue were that the petitioner employed Schlosser from January 1, 1940 to December 31, 1942, as its general manager with complete charge of the operation of the factory and that the petitioner agreed to pay Schlosser $6,000 per year and 8 1/2 per cent of its net sales, the latter amounts to be paid monthly "or credited to an account of the *232 employee and subject to withdrawal upon said employee's demand." On the petitioner's books in an account payable to Schlosser, there appeared a balance of $2,015.33 to his credit at January 1, 1940. At the end of each month, from that date to March 15, 1941, the commissions due him for each current month were duly credited and his withdrawals debited. The total amount of such commissions credited was $19,588.86. On October 31, 1940, the amount of commissions due to him on that date, credited on the account and not withdrawn, was $12,994.44. On January 15, 1941, the portion of the said sum of $19,588.86 then unpaid, was $9,151.14. In addition to the commissions of $19,588.86 so credited to Schlosser, the petitioner accrued the salary of $5,000 covering the 10-month period, making a total compensation of $24,588.86, due and credited to him by the petitioner during that period. The balance sheets of the petitioner as of December 31, 1939, and October 31, 1940, were as follows: Statement of Financial Condition as at December 31, 1939
Assets
Cash
$ 12,365.98
Accounts receivable
35,768.25
Inventories - raw materials
$ 10,849.02
- work in process, finished goods and supplies
18,954.07
29,803.09
Fixed assets
$130,927.82
Less: Reserve for depreciation
51,730.41
79,197.41
Deferred charges
3,851.76
Other assets
208.20
4,059.96
$161,194.69
Liabilities
Notes payable - bank
$ 7,500.00
Notes payable - others
1,685.59
Accounts payable - trade
31,854.99
Accounts payable - Harold L. Schlosser
2,015.33
Accruals - taxes
$ 5,359.95
Accruals - interest
45.00
Accruals - other
695.49
6,100.44
Notes payable - purchase of equipment
4,812.13
Notespayable - dividends to stockholders
1,087.50
Mortgage payable
7,500.00
Total liabilities
$ 62,555.98
Capital
Capital stock
$ 74,958.50
Surplus
23,680.21
98,638.71
$161,194.69
Statement of Financial Condition as at October 31, 1940
Assets
Cash
$ 9,875.45
Accounts receivable
27,133.31
Inventories - raw materials
$ 7,771.71
Inventories - work in process, finished goods and supplies
35,051.20
42,822.91
Fixed assets
$144,023.20
Less: Reserve for depreciation
56,072.00
87,951.20
Cash value of life insurance
$ 1,483.43
Deferred charges
2,561.11
Other assets
69.28
4,113.82
$171,896.69
Liabilities
Notes payable - bank
$ 7,500.00
Accounts payable - trade
21,096.05
Accounts payable - Harold L. Schlosser
12,994.44
Accruals - taxes
$ 3,884.32
Accruals - interest
238.75 $6Accruals - other
193.14
4,316.21
Notes payable - purchase of equipment
11,494.45
Mortgage payable
7,500.00
Total liabilities
$ 64,901.15
Capital
Capital stock
$ 74,958.50
Surplus
32,037.04
106,995.54
$171,896.69
*233 The petitioner's balance sheet as of December 31, 1940, showed figures approximately comparable with those on the October 31, 1940, statement. The petitioner's monthly bank balances from January 1, 1940, to January 15, 1941, ranged from $12,365.98 to $6,475.01, and averaged $8,714.70. In his income tax return for the year 1940, Schlosser included compensation from petitioner in the amount of $30,517.67 as a part of his gross income for that year. The record discloses the following additional facts: The sum of $30,517.63 returned by Schlosser on his 1940 income tax return as his compensation from the petitioner included $5,928.77 covering the months of November and December 1940, and his annual salary of $6,000. Of the aggregate sum of $30,517.63 on December 31, 1940, $14,329.91 was unpaid in cash but was paid to Schlosser during the period from January 1, 1941 to November 1941. Schlosser regarded his account on the petitioner's books as a personal drawing account from which many of his personal bills were paid. He did not need the full amount of his credits in the account and hence allowed the money to stay in the business to avoid borrowing by the petitioner. Schlosser *234 had complete control of the disposition of his account with the petitioner. During December 1939, Schlosser discussed with the officials of the petitioner's bank in Defiance the securing of a loan of $15,000. The officials told Schlosser that the petitioner had already a loan of $15,000, which was the bank's limit to any one company but that they were confident that the loan could be obtained from their correspondent bank in Toledo. After submission of the petitioner's financial statement and due negotiation, the Toledo bank authorized the loan. The petitioner did not borrow the money at that time because its collections came in faster than anticipated but in June 1941, the loan was made. The bank's action was predicated on the same statement which influenced the original grant of the loan. During the year 1940 the petitioner could have completed the loan whenever Schlosser should so determine. During the year 1940 the petitioner was engaged in an expansion program which required additional facilities costing over $20,000. During that year it also increased its inventories by about $15,000. On December 31, 1940, the petitioner had a net worth of over $107,000 and current assets *235 of over $90,000. It had also accounts receivable amounting to about $33,000, practically all of which were current. It had also a cash surrender value of life insurance amounting to about $15,000. Opinion VAN FOSSAN, Judge: We held in Fincher Motors, Inc., 43 B.T.A. 673, that all three of the conditions specified in section 24 (c)[1] must coexist to make the same applicable. Respondent here contends that the expenses in question had not been paid in cash and were not includible in the recipient's gross income and that hence subsections (1) and (2) of section 24 (c) apply. There is no controversy as to the application of subsection (3). Clearly it applies. In Musselman Hub-Brake Co. v. Commissioner, 139 Fed. (2d) 65, the court held that a taxpayer's debts are "paid" within section 24 (c) (1) if the recipient is chargeable with receiving income though such payments were not paid in cash. Clearly under the regulations and the decided cases, Schlosser was chargeable with income tax on the amounts in question. Jacobus v. United States, 9 Fed. Supp. 41. In point of fact, he returned the entire sums credited as part of his gross income for the taxable *236 year. In Michael Flynn Manufacturing Co., 3 T.C. 932, we stated that it was not necessary that the officer of the company who controlled it should receive his compensation in cash but that under facts which form the basis of constructive receipt, the principle applied *237 and sums credited to the officer were includible in his gross income. The fact that at times the petitioner lacked a little of having cash on hand to pay Schlosser in full is not controlling. Jacobus v. United States, supra; Celina Manufacturing Co. v. Commissioner, 142 Fed. (2d) 449. Petitioner at any time could have borrowed ample funds with which to pay the commissions due and credited to him on its books. We hold that the amounts of Schlosser's salary and commissions credited to him and the money paid in cash within the taxable period were paid within the meaning of that term as used in the revenue act, were properly included in his income, and were deductible from petitioner's gross income. The requisites of subsections (1) and (2) are not met. Musselman Hub-Brake Co. v. Commissioner, supra.
Decision will be entered under Rule 50. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. * * * * $ (c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23(a), relating to expenses incurred, or under section 23(b), relating to interest accrued - (1) If such expenses or interest are not paid within the taxable year or within two and one-half months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any times within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24(b)↩.