The Ringgold Corporation v. Commissioner.
Ringgold Corp. v. Commissioner
Docket No. 8967.
United States Tax Court
1946 Tax Ct. Memo LEXIS 62; 5 T.C.M. (CCH) 855; T.C.M. (RIA) 46241; October 10, 1946
Matthew A. Crawford, Esq., 132 N. McKean St., Kittanning, Pa., for the petitioner. Homer F. Benson, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined a deficiency in income tax for the fiscal year ended November 30, 1941, in the amount of $486.56, of which sum petitioner concedes liability for a deficiency of $144.28. For the fiscal year ended November 30, 1942, deficiencies have been determined in income tax, declared value excess profits tax, and excess profits tax in the respective amounts of $674.04; $492.22; and $5,076.29. Petitioner filed its returns with the collector for the twenty-third district of Pennsylvania. The only question to be *63 decided arises under section 24 (c) of the Internal Revenue Code, and is whether petitioner is precluded from deducting sums which it accrued on its books as salary due to its president. Such facts as have been stipulated are adopted as part of the findings of fact, and are incorporated herein by reference. The record consists of stipulations of fact, testimony, and exhibits. Findings of Fact Petitioner, a corporation, has its place of business in Kittanning, Pennsylvania. It keeps its books and prepares its returns on the accrual method of accounting. It files its returns on the basis of a fiscal year ending November 30. During the taxable years, Charles M. Shoffner was president of petitioner. He owned 30 percent of petitioner's stock; and he and the members of his family owned more than 50 percent of the stock. Charles M. Shoffner reports his income on the cash receipts and disbursements basis and files his returns on the basis of a calendar year. Petitioner is engaged in the business of industrial management. It manages the properties of industrial corporations on a fixed or sliding scale fee basis. It has only six employees and no fixed assets *64 except office furniture and fixures. From 1936 on, it has rendered managerial services to the Allegheny River Mining Company under a contract providing for a fee to petitioner of five cents per ton of coal mined. During the taxable years the Allegheny River Mining Company produced about 800,000 tons of coal per year. The annual fee to petitioner approximated $40,000. Shoffner's salary from petitioner was $400 per month from December 1, 1940, until May 31, 1941. Effective June 1, 1941, his salary was increased to $900 per month, and remained at such rate to and including November 30, 1942. Petitioner maintained on its books an account payable to Shoffner, which was a running account between petitioner and Shoffner. The account was entitled "Charles M. Shoffner - Personal Account." At the end of each month petitioner's treasurer credited this account with the monthly salary due Shoffner. The sums credited in the account were unconditionally payable to Shoffner at his request. Shoffner requested payment at irregular intervals. Payment was made by check issued by the treasurer and charged against Shoffner's account. During the fiscal year ended November 30, 1941, the amounts of salary *65 earned by Shoffner, which were credited to him in the above account on petitioner's books were as follows: From December 1, 1940, to May 31, 1941, inclusive, six months at the rate of $400 per month, $2,400; from June 1, 1941, to November 30, 1941, inclusive, six months, at the rate of $900 per month, $5,400; total, $7,800 for petitioner's fiscal year. During the fiscal year ended November 30, 1942, the amount of salary earned by Shoffner and credited to his account each month on petitioner's books was $900 per month, total $10,800. During the fiscal years ended November 30, 1941, and November 30, 1942, and within 2 1/2 months after the end of each fiscal year, the total amounts petitioner paid in cash to Shoffner for accrued salary were at least as follows: For the fiscal year ended November 30, 1941, the sum of $5,725 of the total accruals of $7,800; and for the fiscal year ended November 30, 1942, the sum of $822.30 of the total accruals of salary of $10,800. The unpaid balances in the amounts of $2,075 and $9,977.70 were fully paid in cash to Shoffner by March 31, 1944, at the latest. Shoffner included the entire amount of the authorized and accrued salary credited to him *66 on petitioner's books in his individual income tax returns for the calendar years 1941 and 1942, so that he has reported for income tax the entire amounts for which petitioner seeks deductions in its returns, on the fiscal year basis, for 1941 and 1942. At the end of the fiscal years 1941 and 1942, petitioner had cash deposits in the amounts of $2,591.21 and $1,462, respectively. At the same time its total liquid assets, consisting of cash and accounts receivable were $50,023.56 and $47,889.33. Liabilities to outsiders, other than to officers or shareholders totaled $27,821.35 on November 30, 1941, and $11,380.18 on November 30, 1942. Although petitioner did not have sufficient cash to pay the $2,075 balance of accrued salary for 1941 and the $9,977.70 balance of accrued salary for 1942, its credit position was good. Any one of three banks, with which petitioner and Shoffner did business, would have loaned petitioner, at the close of the fiscal years, sufficient cash to satisfy the above salary balances credited to Shoffner. There were no restrictions as to time or manner of payment of the accrued and credited amounts of Shoffner's salary for the taxable years. The credits represented *67 an unconditional obligation to pay, at Shoffner's request, the balance shown to be due for salary owing to him. The parties are agreed that the amounts of $2,075 for 1941, and $9,977.70 for 1942 represent only salary accrued and credited to Shoffner, and do not include any other type of expense. Opinion The only question is whether petitioner is entitled to deduct the entire amount of Shoffner's salary, all of which was accrued on its books and credited to Shoffner, in the taxable years. Respondent has disallowed deductions in each year of the balances of the annual salary credited to Shoffner in the account with Shoffner which were not withdrawn by him during the petitioner's fiscal years and within 2 1/2 months thereafter. Respondent's position is that section 24 (c) (2) is applicable to the facts in this case and precludes the deductions claimed. The facts show that while petitioner did not have sufficient cash on hand for payment of the credited balances of the salary of Shoffner at the end of each taxable fiscal year, its credit with three banks was such that any one of the banks with which petitioner did business would have loaned petitioner the required amount of cash *68 to pay the balances to Shoffner, if he had made demand upon petitioner for payment. These facts, plus other facts, bring the question presented within the rule of Ohio Battery & Ignition Co., 5 T.C. 283, on which petitioner relies. The rationale of the Ohio Battery & Ignition Co. case is that "Lack of ready cash, particularly considering the strong credit position of the petitioner, does not defeat constructive receipt." Under facts closely resembling the facts here, it was held in the above cited case that subdivision (2) of section 24 (c) did not apply. Here, the facts show that Shoffner was obligated to report in his returns the sums credited and made unconditionally available to him under the doctrine of constructive receipt; and he reported the entire salary in his returns for 1941 and 1942. It follows that petitioner is entitled to the deduction claimed. Respondent has acquiesced in the holding in the Ohio Battery & Ignition case. The question presented here is entirely a fact question, namely, whether Shoffner constructively received payment of the salary in the amounts which petitioner seeks to deduct. That question turns upon the facts relating to petitioner's *69 cash and credit position and whether or not the credited amounts of accrued salary were unconditionally available to Shoffner. We are satisfied from the evidence before us that the facts here bring the question squarely within the cited authority. It is held that respondent erred in disallowing deductions of $2,075 and $9,977.70 in the respective taxable years. Decision will be entered under Rule 50.